Wtlx, J.,
dissenting. Section 1 of act No. 134 of the acts of 1866 provides “ that from and after the first day of January, 1867, it shall be lawful for all persons after they have obtained the license required for retailers of provisions to open and keep open at all proper hours of the day private markets, stores or stands, in any part of the city of New Orleans for the sale of meats, game, poultry, vegetables, fruit, and fresh fish, subject to the general sanitary ordinances of the City Council. In the record I find that the defendant, James Stafford, obtained State and city licenses as a wholesale merchant for the year ending thirty-first December, 1874. Under these licenses he has authority to sell at retail. He has all the “licenses required for retailers of provisions.” Having the licenses required for retailers of provisions, James Stafford fully complied with the act of 1866, and his contract made in pursuance thereof is protected by the constitution of the United States, and it is in no manner impaired by.the act No. 31 of acts of 1874, which was passed after said contract was made.
The plaintiffs, however, contend that three months before the defendant took out licenses as a wholesale merchant, entitling him to pursue the occupation of a retailer of provisions, the city passed an ordinance fixing the license for private markets at $300; and not hav *422 ing paid this license the defendant was not authorized to pursue the occupation of a keeper of a private market under his wholesale dealers licenses of one hundred dollars to the State and one hundred dollars to the city. To this a sufficient answer is, that the defendant having paid the licenses required for retailers of provisions, was entitled under the act of 1866 to keep a private market; and the city had no authority to pass the ordinance fixing the additional license or tax of $300. As the State had the right to pass the law and fix the conditions upon which it would allow private markets, the city of New Orleans could not impose an additional condition without asserting the right to amend a law of the State. When the State says that all persons may keep private markets upon taking out the licenses required for retailers of provisions, the city of New Orleans has no right to defeat or restrict the will of the sovereign by passing an ordinance requiring an additional tax or license of $300. The defendant paid the license required of retailers of provisions; he accepted the offer of the State contained in the act of 1866; and the contract was perfected by which he acquired the right to keep a private market at his store for the year 1874.
Assuming that act No. 31 of the acts of 1874, is constitutional, and that it repeals that part of the act of 1866, allowing private markets within twelve squares of a public market, in my opinion this law, passed after the defendant’s rights were acquired, in no manner affected him. During the period fixed in the licenses, the defendant has the right to keep a private market. The State can not destroy this right without impairing the obligation of a contract. It is useless to talk of the exercise of police power by the State in the interest of public order and the health of the city. No one questions the right of the State to pass needful laws for the preservation of these important interests. No one has the right to pursue an occupation detrimental to the public health and safety. But the precise question is, is the statute No. 31 of the acts of 1874, a law passed in the interest of good order and public health? How can the public health and good order be endangered by allowing private markets within twelve squares of a public market? If private markets beyond twelve squares of a public market will not endanger public health and safety, how comes it that such markets within twelve squares will be detrimental? There is nothing in the act showing that the motive of the lawgiver was to preserve good order and the public health. It is an argument suggested by the ingenuity of counsel, and in my opinion it is , entirely foreign to the issues presented in this case.
The title of the act is “An act to regulate the private markets of the city of New Orleans and for other purposes.”
*423 Section first makes it unlawful to keep a private market for the sale of fresh méats, poultry, fresh fish, etc., within twelve squares of a public market. Section second authorizes the Administrator of Commerce to close such markets opened or conducted in violation of section one. Section third imposes a penalty for violating section one.
Section fourth makes it the duty of the judge of the First District Court to charge the grand jury as to the provisions of this act.
Section fifth provides: “That upon the reverse side of each and every license granted by the State of Louisiana or the city of New Orleans for the carrying on, conduction, and operation of a private market for the sale of fresh meat, poultry, fresh fish, etc., the following words shall be printed thereon: “ It is distinctly understood that the holder of this license shall not open, establish, or carry on a private market within twelve squares of any public market under penalty of the forfeiture of this license.”
Section sixth provides that this act shall take effect from and after its passage, and that all laws in conflict therewith are repealed.
As before remarked, there is not one word in the statute showing that it is a police law for the preservation of good order and the public health. On the contrary, from the terms of the act the conclusion is inevitable that the lawgiver simply desired to amend the act of 1866, so as to prohibit private markets for the sale of fresh meats, fish, etc., within twelve squares of a public market. And this view is confirmed by considering the fifth section, which provides that hereafter a certain stipulation shall be printed on the reverse side of the licenses to carry on a private market. It imposes a new condition in the contract arising from the taking out of licenses under the act of 1866, whereby the person taking out said licenses stipulates not to keep a private market for the sale of fresh meats, fish, etc., within twelve squares of a public market. The law before us simply adds a new condition to the standing offer of the State under the law of 1866, to sell licenses or to make a contract with any one desiring it, to keep a private market.
How the modification of an offer to make a contract can modify or alter a contract already made, I can not imagine. There was no stipulation when the defendant got his licenses for the year 1874 that he would not keep a private market within twelve squares of a public market. A stipulation proposed in a law passed subsequent to the purchase of the licenses by the defendant, forms no part of the contract which arose by the purchase of said licenses. It is a stipulation which was not demanded by the State at the time, and which was not consented to by the parties. It therefore forms no' part of the contract between the defendant and the State and is not obligatory on him.
*424 Another reason why the statute was not passed to promote the public health is, that for that purpose this law was not necessary, the act of 1866 establishing private markets expressly stipulating that the right is granted, “ subject to the general sanitary ordinances of the City Council.” Besides, under the charter of 1870 the city has full authority to pass ordinances: “ To regulate and preserve the peace and good order of the city, and to provide for and maintain its cleanliness and salubrity.” * * * After confiding the care of public health and good order to the city, the State had no occasion to pass the statute before us in the interest of good order and public health.
In the absence of a motive we can not presume the statute a police regulation.
But suppose the lawgiver had declared the act a police regulation, that would not make it such. Under the name of a police law the State can not deprive a citizen of his property or the right to pursue the occupation for which he has a license, when the enjoyment of such property or the pursuit of such occupation will not endanger public health, safety, peace and good order. The enjoyment of the occupation for which the defendant has State and city licenses for the year 1874, will in no manner endanger the public interests which the State can protect under the exercise of its police power. The police power, like all powers confided to the Legislature is not unlimited; and of the extent of this power it is for the courts and not the Legislature to decide. Any other doctrine would be subversive of liberty. The Legislature could call its laws police regulations, and thereby escape all the limitations of the constitution.
I agree with the district judge that the plaintiffs have no pecuniary interest in the controversy, the city having leased out the public markets for 1874. The enforcement of the law may benefit the lessees of the public markets, because it virtually gives them a monopoly or an exclusive right over all other persons to sell fresh meats, fish, poultry, and vegetables within twelve squares of the public markets. But whether the law is enforced or not against the defendant it can confer no pecuniary benefit on the plaintiffs. The jurisdiction of this court in civil cases is limited, and as the matter in dispute does not exceed five hundred dollars this court is without jurisdiction ratione materia, and the appeal should, on that account, be dismissed.
I come now to consider the constitutionality of the statute. Article 114 of the constitution requires that the object or objects of every law shall be expressed in its title. The sole object of the act is to amend the act of 1866, so as to prohibit private markets for the sale of fresh meats, game, poultry, fresh fish, and fruit within twelve squares of a public market, the intention being to give public markets the monopoly, *425 within such limits, of selling such produce or articles of merchandise. This, the undoubted object of the law, is not expressed in its title. The title “to regulate private markets” gives no clue to the purpose or object of the law. No one hearing the title of the act read would be apprised of the purpose to amend the act of 1866, so as to prohibit private markets for the sale of fresh meats, fish, poultry, and fruits within twelve squares of a public market. If this title be good to cover a prohibitory law within twelve squares, why would it not be equally as good to cover a law prohibiting private markets within one mile or twelve miles of a public market. To regulate suggests the idea of administering a thing, not of destroying it; the private markets we understand from the title are to be administered, all of them, in a certain way; but the title gives no clue to the destruction of any them. In my opinion the law is not covered by its title. It is repugnant to article 114 of the constitution and therefore void.
For the reasons stated I feel constrained to dissent in this case.